# In the United States Court of Federal Claims

No. 19-932C

(E-Filed:  July 22, 2019)[1]

|  |  |  |
|---|---|---|
| PERATON INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Post-Award Bid Protest; Sole-Source |
| | ) | Bridge Contract; Sustained GAO Bid |
| THE UNITED STATES, | ) | Protest and Agency Corrective Action; |
| | ) | Allegation of Bad Faith Conduct; |
| Defendant, | ) | Request for Preliminary Injunction |
| | ) | Granted in Part. |
| and | ) | |
| | ) | |
| ENGILITY CORPORATION, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |
| | ) | |

Kevin P. Connelly, Washington, DC, for plaintiff.  Kelly E. Buroker and Jeffrey M.
Lowry, of counsel.

Michael D. Snyder, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney
General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant Director,
Commercial Litigation Branch, United States Department of Justice, Washington, DC,
for defendant.  Robert J. Brady, Jonathan P. Widmann, and Michael J. Farr, United States
Air Force, of counsel.

---

[1]      This opinion was issued under seal on July 17, 2019.  Pursuant to ¶ 4 of the
ordering language, the parties were invited to identify source selection, proprietary or
confidential material subject to deletion on the basis that the material was
protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and
public versions of this opinion are identical, except for the publication date, this footnote,
and the correction of one keyword error.

<u>Anne B. Perry</u>, Washington, DC, for intervenor-defendant.  <u>Jonathan S. Aronie</u>, <u>Townsend L. Bourne</u>, <u>Katie A. Calogero</u> and <u>Shaunna Bailey</u>, of counsel.

<u>OPINION AND ORDER</u>

CAMPBELL-SMITH, Judge.

This post-award bid protest is before the court on plaintiff's motion for a temporary restraining order (TRO) and preliminary injunctive relief, which was briefed on an accelerated schedule.[2]  <u>See</u> ECF No. 6.  The court has reviewed plaintiff's complaint and exhibits, ECF No. 1, plaintiff's memorandum in support of its motion, ECF No. 7, intervenor-defendant's response brief and exhibits, ECF No. 28, defendant's opposition brief and exhibits, ECF No. 29, and plaintiff's reply brief and exhibits, ECF No. 30.  Oral argument was deemed unnecessary.  For the reasons set forth below, plaintiff's motion is **GRANTED in part** and **DENIED in part**.

I.      Background[3]

        A.      Solicitation

The procuring agency here is the United States Air Force.  The competition that underlies this protest is for a range of services focused on satellite support, expressed as "Engineering, Development, Integration, and Sustainment," or EDIS.  ECF No. 1-1 at 24.  The solicitation, Request for Proposal No. FA8818-18-R-0021, sought proposals for a five-year, plus two option years, Indefinite Delivery Indefinite Quantity (IDIQ) contract, and was issued on May 8, 2018.[4]  <u>Id.</u> at 33, 47-474; ECF No. 7 at 11.  The key term of the solicitation, for the purpose of plaintiff's motion, is the requirement regarding small business participation in the contract services.  As relevant here, the offerors were required, at a minimum, to use small businesses for 25% of the labor Contract Line Item Number (CLIN) services.  ECF No. 1-1 at 341, 465-66.

        B.      Relevant Contract History

---

[2]      Given the posture of this procurement, plaintiff's request for a TRO is moot due to the efficacy of the relief which can be provided by a preliminary injunction.

[3]      This recitation of facts is taken from the parties' filings and is meant to provide context.  This opinion does not contain any fact-finding by the court.

[4]      According to intervenor-defendant, the version of the solicitation in the record before the court was subsequently modified, but not in relevant part.  ECF No. 28 at 8 n.1.

Here, the court summarizes the history of EDIS services, but only to the extent necessary for the resolution of plaintiff's motion.  The previous holder of a long-term EDIS-type contract was Lockheed Martin, Inc. (Lockheed).  Id. at 33.  To bridge the gap between the expiration of Lockheed's long-term contract and the awardee's performance of the EDIS contract, Lockheed was awarded a sole-source bridge contract which expired on July 5, 2019.  ECF No. 29-1 at 2.

C.     EDIS Contract Awarded and GAO Protest Filed

When the competitive range was established in late 2018, two of the five offerors, including Lockheed, were eliminated from the competition.  ECF No. 1-1 at 34, 479.  After discussions were held with the remaining three offerors, final proposals were received from plaintiff, Peraton Inc. (Peraton), intervenor-defendant, Engility Corporation (Engility), and a third unnamed offeror.  Id. at 479.  Engility was awarded the contract on January 31, 2019, and began performance of transition activities on February 6, 2019.  ECF No. 29-1 at 2.

Once Peraton received a debriefing, plaintiff filed a protest at the Government Accountability Office (GAO) on March 5, 2019.  Id.  A stop work order was issued on March 7, 2019.  Id. at 2-3.  As Peraton's bid protest was litigated, the agency approved a partial override of the automatic stay provided by the Competition in Contracting Act (CICA), pursuant to 31 U.S.C. § 3553(d)(3)(C) (2012).  The partial CICA override was approved on April 18, 2019, according to the Determination and Findings (D&F) document in the record, which permitted Engility to continue to perform services ordered under CLIN 0001 (Transition).  ECF No. 1-1 at 32-45.  Peraton did not challenge the partial CICA override at the GAO or in a contemporaneous suit in this court, and it does not challenge the partial CICA override in this suit.  ECF No. 30 at 12 n.3.  Transition services performed by Engility under CLIN 0001 ended on June 20, 2019.  ECF No. 29-1 at 3.

D.     GAO Recommendations

The only protest ground discussed at any length by the GAO in its decision was the 25% small business participation requirement, and on this ground, Peraton's protest was sustained.  ECF No. 1-1 at 476-86.  The GAO decision issued on June 11, 2019.  Id.  The GAO made three recommendations to the Air Force that are pertinent here.  The relevant paragraph of the GAO decision is excerpted here in its entirety:

> We recommend that the Air Force review the terms of the solicitation to determine if this requirement reflects the agency's actual requirements with regard to small business participation in the EDIS contract.  If the agency determines that this requirement does meet its actual requirements, we recommend that the agency either terminate the contract awarded to Engility for the convenience of the government and make award to the

offeror whose proposal complies with the terms of the solicitation and offers the best value to the government; or open discussions with all offerors, obtain revised proposals, document its evaluation, and make award consistent with the terms of the solicitation.  In the alternative, the agency may consider revising the terms of the solicitation if appropriate.  If the agency revises the terms of the solicitation, it should open discussions with all offerors, obtain revised proposals, document its evaluation, and make award consistent with the terms of the solicitation.

Id. at 486.

Thus, the GAO offered the Air Force three alternatives for the correction of the contract award, the first two of which would reflect the agency's decision that it should keep the small business participation term as stated in the solicitation.  Alternative number one would be to terminate Engility's award and award the EDIS contract to one of the two remaining offerors in the competitive range.  Plaintiff, understandably, views this alternative as the optimal choice.

Alternative number two would be to institute a corrective action which would involve discussions and revised proposals from all offerors, and a revised evaluation and award in compliance with the small business participation requirement of the solicitation. According to the government and Engility, that is the alternative that the Air Force is currently pursuing.  Peraton does not view the corrective action undertaken by the government in the same light.  See infra.

Alternative number three suggested by the GAO would be to amend the solicitation, open discussions with all offerors, obtain revised proposals, and make award consistent with the terms of the revised solicitation.  The court notes that this alternative would provide the Air Force with an opportunity to change the small business participation term in the solicitation, which could be advantageous if that term, as written, was fundamentally ambiguous and harmful to full competition.  None of the parties to this suit have discussed this third alternative in any detail.

E.    Sole-Source Bridge Contract Awarded to Engility

On June 20, 2019, the Air Force awarded a sole-source bridge contract to Engility, allowing Engility to provide EDIS services for up to four three-month periods, to bridge the gap between the expiration of Lockheed's sole-source bridge contract on July 5, 2019, and the resolution of the corrective action which the Air Force has undertaken to award the EDIS contract in accordance with the guidance provided by the GAO.  ECF No. 29-2 at 1-8.  Some of the reasoning in the Justification and Approval (J&A) document supporting the sole-source award to Engility is consonant with the reasoning in the D&F issued two months earlier, but the J&A can also be read to show how the agency's reasoning had changed regarding the steps the agency planned to take to

4

achieve continuity of EDIS services.  In Count I of this suit, Peraton challenges the sole-source award to Engility.  ECF No. 1 at 11-12.

> F.      Corrective Action

In Count II of its complaint, Peraton challenges the corrective action that the Air Force has undertaken in response to the recommendations of the GAO.  Id. at 12-13.  One aspect of the corrective action is reflected in three different versions of evaluation notices (ENs) provided to the three offerors in the competitive range, asking that the offerors revisit, and possibly revise, the small business participation information in their proposals.  See ECF No. 1-1 at 868, 870, 872, 874; ECF No. 29-3 at 2; ECF No. 30-1 at 2-3.  The offerors' responses to the ENs were due on July 10, 2019.  ECF No. 29-3 at 2.  Subsequently the agency intends to solicit final proposal revisions (FPRs).  Id.  Finally, the Air Force, to conclude the corrective action, contemplates making an award of the EDIS contract based on its evaluation of the offerors' FPRs.  Id.

> G.      Plaintiff's Allegations of Bad Faith Conduct by the Agency

In Count III of the complaint, as enhanced by Peraton's briefing of its motion, plaintiff asserts that there is clear and convincing evidence that the Air Force has favored Engility and has attempted to direct the award of the EDIS contract to Engility.  ECF No. 1 at 14; ECF No. 7 at 26-29; ECF No. 30 at 20-22.  For example, plaintiff argues that both the sole-source bridge contract awarded to Engility, and the agency's corrective action, "are pretextual actions to ensure [that] Engility receives the EDIS award."  ECF No. 30 at 5-6.  Although plaintiff's arguments also reference the concept of "abuse of discretion" and the requirement for fundamental fairness in the procurement process, the primary thrust of plaintiff's allegations is that the agency has acted in bad faith in this procurement.  See ECF No. 1 at 14 (stating that the facts of this case "demonstrate an intent by the Air Force to ensure that Engility receives the resulting contract under the pretext of a competitive award").

The court now turns to the standard of review applicable to plaintiff's motion.

## II.      Legal Standards

> A.      Bid Protest Standard of Review

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2012)]:  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).  Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the

agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure.  Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential."  Advanced Data Concepts, 216 F.3d at 1058.

De minimis errors in the procurement process do not justify relief.  Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing Andersen Consulting v. United States, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)).  The bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question.  Id. (citing CACI Field Servs., Inc. v. United States, 854 F.2d 464, 466 (Fed. Cir. 1988)).  Examples of arbitrary and capricious agency action include "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).  The court will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (citation omitted).

"'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.'"  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

B.    Injunctive Relief

As the Federal Circuit has held:

> In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987)).  The standard for a preliminary injunction is the same, except that likelihood of success on the merits -- instead of actual success on the merits -- must be shown by the plaintiff.  Id. at 1229.  The

same four-part test applies to a request for a TRO in the bid protest context.  E.g., W & D Ships Deck Works, Inc. v. United States, 39 Fed. Cl. 638, 647 (1997) (citations omitted).

III.    Analysis

The parties' briefing is thoughtful and well-reasoned, notwithstanding the short timeframes permitted by the court's expedited briefing schedule.[5]  All of the briefs follow the organizational scheme set by the complaint, beginning with the merits of each of the counts in the complaint, and ending with a global discussion of the injunctive relief factors.  The court will follow the same organizational scheme, except that the court's weighing of the injunctive relief factors will occur, in three separate iterations, within its discussion of each count of the complaint.  The court notes that its rulings on plaintiff's requests for a TRO and a preliminary injunction herein do not address plaintiff's request for a permanent injunction in this suit, which will require a complete administrative record and additional briefing.

  A.  Count One:  Sole-Source Bridge Contract Award to Engility

    1.  Standing

Both Engility and defendant argue that Peraton lacks standing to challenge the sole-source bridge contract awarded to Engility on June 20, 2019.  ECF No. 28 at 20-23; ECF No. 29 at 19.  On the record and the arguments currently before the court, the court agrees that plaintiff has not met its burden to establish standing for this bid protest ground.  Plaintiff addresses the question of standing in both its opening brief and its reply brief.  ECF No. 7 at 18-19; ECF No. 30 at 12-13.  Plaintiff's standing arguments are not persuasive, as currently briefed.

As plaintiff notes, Peraton must show that it had a substantial chance of obtaining the award of the sole-source bridge contract that was awarded to Engility.  ECF No. 7 at 18 (citing CliniComp Int'l, Inc. v. United States, 904 F.3d 1353, 1358 (Fed. Cir. 2018)).  As of June 20, 2019, when Engility had completed the transition activities allowed under the partial CICA override, the Air Force was faced with the expiration of Lockheed's bridge contract on July 5, 2019.  As the government argues, Peraton has not shown how it could have begun performance of a sole-source bridge contract at that time, because it lacked Lockheed's experience, or Engility's 90-day transition experience.  See ECF No. 29 at 19 ("Peraton does not attempt to demonstrate how it could perform the bridge contract without first undergoing the 90-day transition period, which it would need to do in order to acquire the credentials needed to perform.").

---

[5]  The court has considered all of the arguments presented by the parties, but due to time constraints, limits its analysis here to arguments which are dispositive.

Plaintiff, once Engility gained the transition experience permitted by the partial CICA override, was not positioned to compete for a bridge contract on June 20, 2019. On this record, plaintiff has not shown that it had a substantial chance of award so as to have standing to challenge the award of the bridge contract to Engility. Although Peraton argues that it would have been competitive for the award of a sole-source bridge contract if the Air Force had adequately planned for its needs, that is not the standing question here. ECF No. 30 at 12-13. Because plaintiff has not shown that it possesses standing for its challenge to the award of the sole-source bridge contract to Engility, the court need not further address the parties' arguments regarding the merits of Count I of the complaint.

The court notes, however, that the transition from Lockheed's bridge contract to Engility's bridge contract raises a number of concerns. How, exactly, did the transition of the incumbent's personnel to Engility occur during the relevant timeframe, and what was the impact of the change-over on Lockheed's capabilities to step in and provide continuity of EDIS-type services? See ECF No. 30 at 9 (Peraton questioning the "fuzzy" math used to explain the losses of key Lockheed personnel to Engility). Further, how well did the Air Force's planning in this procurement, at each point in the process, meet the standard for justifying the use of a sole-source contract in favor of one of the competitors seeking the award of a long-term contract? These concerns must be further developed to address plaintiff's allegations of bad faith conduct in Count III of the complaint, and, if plaintiff is able to establish standing in a subsequent round of briefing, to address plaintiff's allegations of error in Count I of the complaint.

### 2.    Injunctive Relief Factors Weighed for Count I

Because plaintiff has not met its burden to establish standing, Peraton is not likely to succeed on the merits of Count I. This weighs heavily against the issuance of a preliminary injunction. See, e.g., FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993) ("Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown."). Indeed, the Federal Circuit has held that a failure to show likelihood of success on the merits is dispositive. See Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (stating that "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits") (citation and footnote omitted).

Further, irreparable harm to plaintiff is not established because Peraton has not shown a likelihood of success on the merits. See Akal Sec., Inc. v. United States, 87 Fed. Cl. 311, 319-20 (2009) (stating that the "strength or weakness of [the protestor's] merits arguments largely determines the court's view of irreparable injury"). As for the balance of hardships, the government and Engility persuasively argue that the harm that would be caused by an interruption in the continuity of EDIS services outweighs the harm experienced by Peraton as a result of Engility's performance of up to twelve months of

EDIS services through the sole-source bridge contract.  See ECF No. 28 at 39 ("If a TRO/PI is issued to stop the bridge contract awarded to Engility, the Agency will suffer severe harm resulting from interruption to the support services required to sustain and maintain ground system operations.") (citing ECF No. 29-2 at 3); ECF No. 29 at 29 (stating that a "preliminary injunction would undermine national security") (citing ECF No. 29-2 at 4).  Thus, the first three injunctive relief factors all weigh against the issuance of a preliminary injunction of the sole-source bridge contract to Engility.

For the public interest factor, Peraton argues that procurement integrity and robust competition are in the public interest, and the court would agree.  ECF No. 7 at 30-31.  As to Count I, however, plaintiff has not shown that Peraton is likely to succeed on the merits.  The Federal Circuit has found that there was "no strong public interest" in the issuance of a preliminary injunction in a case where the likelihood of success on the merits was not demonstrated.  Wind Tower Trade Coal. v. United States, 741 F.3d 89, 101 (Fed. Cir. 2014).  In the court's view, the injunctive relief factors are not in favor of a preliminary injunction of the sole-source bridge contract award to Engility.

> B.      Count Two:  Corrective Action

> 1.      Rational Basis Test

Peraton argues that the corrective action undertaken by the Air Force is "not rational" and thus fails the standard of review stated in Dell Federal Systems, L.P. v. United States, 906 F.3d 982 (Fed. Cir. 2018).  ECF No. 7 at 22.  The court notes that the corrective action, according to the most recent documents submitted by the parties, is ongoing.  See, e.g., ECF No. 28-1 at 6; ECF No. 29-3 at 2.  The court agrees with plaintiff that the corrective action currently underway does not appear destined to survive the "rational basis" standard of review stated in Dell.  906 F.3d at 992.

The Federal Circuit's holding in Dell requires only that an agency's corrective action have a rational basis, and notes that this standard of review is highly deferential.  Id.  All that is needed is a "'coherent and reasonable explanation of [the agency's] exercise of discretion.'"  Id. (quoting Banknote, 365 F.3d at 1351).  One way to challenge a corrective action, traditionally, has been to attack the rationality of the GAO recommendation that the agency is attempting to implement.  Cf. Raytheon Co. v. United States, 809 F.3d 590, 596 (Fed. Cir. 2015) (stating that "we have upheld agency corrective actions taken on the basis of formal GAO determinations where the GAO determinations were rational" (citing Turner Constr. Co. v. United States, 645 F.3d 1377, 1383 (Fed. Cir. 2011); Honeywell, 870 F.2d at 647)).  Peraton, however, does not explicitly challenge the rationality of the GAO's recommendations in this suit.  ECF No. 28 at 34 n.10 (Engility noting that "Peraton has not challenged [the] GAO's recommendation as irrational").

Instead, plaintiff suggests that the Air Force's corrective action fails to correct a procurement impropriety.[6] ECF No. 7 at 22-24. In plaintiff's view, the corrective action misses the mark by opening limited discussions as to each offeror's small business participation percentages, instead of eliminating Engility for its inadequate usage of small business subcontractors, holding more comprehensive discussions, or amending the solicitation. Id. at 24. Plaintiff is adamant that the solicitation term addressing small business participation is unambiguous and that the term does not need clarification.[7] Id. at 25.

Plaintiff's litigation position, here, as to Count II, is somewhat challenging, because it is based on a GAO decision that is pro-plaintiff in one respect, and pro-government in another. Fundamental to Peraton's protest here is the GAO's conclusion that Engility did not meet the small business participation requirement in the solicitation.[8] Id. at 8 ("The GAO expressly sustained Peraton's protest on this ground, finding that Engility is ineligible for award under the explicit terms of the Solicitation."). Yet, the GAO clearly offered to the Air Force one recommendation alternative for corrective action that involved discussions, which could reasonably encompass the small business participation requirement in the solicitation, and, a re-evaluation of the proposals received after those discussions. ECF No. 1-1 at 486. Although plaintiff considers the limited discussions conducted by the Air Force to be irrational, the GAO itself endorsed the corrective action concept that the Air Force is attempting to implement.

Applying Dell, the court finds that a corrective action which limited discussions to the topic of the small business participation term in the solicitation was a reasonable approach, and unobjectionable, as a general course of action, under the rational basis standard of review. Both Engility and the government argue that such discussions, to be meaningful, would necessarily offer Engility an opportunity to revise its proposal to avoid elimination based on the small business participation requirement. ECF No. 28 at 36 n.11; ECF No. 29 at 25. Nothing in the record now before the court shows that the

---

[6]     Plaintiff also argues that the corrective action creates an additional impropriety, that of directing the contract award to Engility, ECF No. 7 at 25, an allegation that is better addressed in the court's analysis of Count III of the complaint, infra.

[7]     In plaintiff's reply brief, Peraton does entertain the possibility that clarification of the offerors' small business participation percentages might be appropriate. ECF No. 30 at 17.

[8]     The court offers no opinion as to whether the small business participation information in Engility's proposal did, indeed, render Engility ineligible for award under the terms of the solicitation.

discussions held with the offerors during the corrective action strayed from the general guidance provided by the GAO.

The key question for the court now is whether the discussions actually held with the offerors have been rational.  As noted earlier in this opinion, the ENs sent to the offerors arrived in three different versions, with the latest round of ENs cancelling the first two.  ECF No. 30-1 at 3.  The last EN stated that the relevant solicitation term "is agnostic concerning [a state tax cost] in the prices."  Id.  A spreadsheet is attached to the EN, but the formula for producing the small business participation percentage for each offeror's proposal, and the cost elements to be entered into that formula, are not clearly explained in the parties' briefs.[9]  Id.

In the court's view, the agency's corrective action, as documented in the record thus far, falls short of being rational.  Indeed, if there is a logic in the Air Force's ENs that have issued to the offerors, it is not apparent to the court.  The court, under Dell, will uphold a corrective action that is coherent and reasonable.  This corrective action, as explained in the documents before the court, is not.

To determine, at a later date, whether a permanent injunction should issue, the court would benefit from a fuller understanding of the parties' arguments regarding the ambiguity, or clarity, of the small business requirement in the solicitation, and from a more transparent record setting forth the formula being presented to the offerors through the latest round of ENs.  Plaintiff insists that the small business participation requirement stated in the solicitation is unambiguous.[10]  ECF No. 7 at 25.  Engility contends that this term is ambiguous.  ECF No. 28 at 33.  The government states that its corrective action has the objective of ensuring that the offerors employ "a consistent methodology [for] the small business participation calculation."  ECF No. 29 at 26.  After an administrative record has been filed and the parties have explained that record to the court, the record may then show that the government has devised a rational means to achieve its objective.  On the record now before the court, the court cannot readily discern whether this is true.

---

[9]     According to plaintiff, the latest spreadsheet sent to the offerors by the Air Force replicates the calculation used by Peraton during the GAO protest.  ECF No. 30 at 15 (citing ECF No. 1-1 at 834; ECF No. 30-1 at 2-3).

[10]     The court observes that the analysis of the solicitation provided in the GAO decision constitutes persuasive authority, but it is not binding on this court.  See, e.g., Allied Tech. Grp., Inc. v. United States, 649 F.3d 1320, 1331 n.1 (Fed. Cir. 2011) (stating that GAO decisions do not create binding precedent for the United States Court of Appeals for the Federal Circuit); XTRA Lease, Inc. v. United States, 50 Fed. Cl. 612, 618 (2001) (stating that "GAO decisions are not binding on this court") (citation omitted).

2.      Injunctive Relief Factors Weighed for Count II

Plaintiff has shown a likelihood of success on the merits of the allegations in Count II of the complaint.  The court also views the harm to Peraton, if the corrective action is allowed to culminate in the Air Force's award of the contract, as quite severe and irreparable.  The court agrees with Peraton that the most likely beneficiary of the corrective action now underway is Engility, whose proposal may be revised in any manner that would establish that its plan for small business participation is acceptable. See ECF No. 28-1 at 8.

As part of its consideration of the balance of hardships, the court makes two preliminary observations.  First, much of the urgency in this procurement appears to be of the Air Force's own making.  Second, in response to this urgency, the Air Force has twice favored one of the three offerors in the competitive range of this procurement, through a partial CICA override and a sole-source bridge contract award, tilting what was once a level playing field.  This is the context in which the harms to the government, Engility and Peraton must be considered.

In the government's view, national security and the financial risks of any interruption in EDIS services argue strongly against an injunction of the Air Force's corrective action.  ECF No. 29 at 29.  Should the court enjoin the corrective action, intervenor-defendant argues that Engility could not "compete on an equal basis and under unambiguous requirements."  ECF No. 28 at 40.  In response to these arguments, plaintiff suggests that the court "tailor any injunction to limit harm."  ECF No. 30 at 23-24.  The court agrees with Peraton's suggestion.  In order to avoid any potential harm to national security and this procurement activity, the court will only enjoin any contract award founded on the corrective action, but not the corrective action steps that would lead to such award.[11]

Finally, as to the public interest, the court agrees with plaintiff that procurement integrity is of paramount importance.  The tailored injunction contemplated here ensures that the parties and the court preserve, for a relatively short time, the competitive nature of this procurement.  The bridge contract now in place provides some flexibility to the government to ensure the continuity of EDIS services during the pendency of this protest.  Thus, national security has been duly considered and will not be threatened by the injunction required here.

Because all four injunctive relief factors weigh in favor of preventing a contract award until the merits of Peraton's protest have been litigated, the court must issue an

---

[11]      The court, however, does not discourage the government from further revising its corrective action if such revisions would promote fair and open competition.

injunction of any contract award based on the corrective action currently underway in this procurement.[12]

      C.    Count III:  Allegations of Bad Faith Conduct by the Air Force

          1.    Burden of Proof

      It is not necessary to recount all of the aspects of the history of this procurement which, in plaintiff's view, constitute bad faith conduct by the Air Force.  Plaintiff focuses, for example, on the differences between the rationale presented in the D&F, in April 2019, and the rationale presented in the J&A, in June 2019, to support actions which created a competitive advantage for Engility.  ECF No. 7 at 8, 27-29; ECF No. 30 at 21.  Plaintiff also argues that the Air Force's corrective action is designed to preserve Engility as the awardee of the EDIS contract, not to correct any impropriety in the initial award decision.  See ECF No. 30 at 22 (stating that "nothing justifies the Air Force's improper corrective action other than a narrowly-targeted attempt to ensure that Engility receives the permanent contract").  The court agrees with plaintiff that it is quite possible to discern a pattern of conduct here that favored Engility over the other offerors.

      Unfortunately for plaintiff, however, the burden of proof for allegations of bad faith requires clear and convincing evidence.  See, e.g., Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002) (stating that "clear and convincing most appropriately describes the burden of proof applicable to the presumption of the government['] good faith").  Too many of the facts presented thus far by the parties, which might be indicative of bad faith, could instead be indicative of rational decision-making that engendered unfortunate results.  Once an administrative record has been filed and analyzed by the parties in subsequent briefing, the question of bad faith conduct can be resolved.  At this time, plaintiff has not shown a likelihood of success on the merits of Count III of the complaint.

          2.    Injunctive Relief Factors Weighed for Count III

      Because plaintiff has not shown a likelihood of success on the merits of its bad faith allegations, this factor counsels strongly against the award of a preliminary injunction based on bad faith conduct by the agency.  See supra.  Because plaintiff will benefit from an injunction of any contract award contemplated by the Air Force after it completes its corrective action, see supra, the court does not view the absence of a more extensive injunction as causing irreparable harm to plaintiff.  Finally, in the court's view, the balance of hardships factor and the public interest factor cannot outweigh plaintiff's failure to show a likelihood of success on the merits of Count III.  Overall, no injunction

---

[12]    The court will entertain a renewed request from the government for the posting of security in the form of a bond.  See infra.

broader than that entered regarding Count II of the complaint is justified when the court weighs the injunctive relief factors relevant to Count III of the complaint.

D.     Further Proceedings

Plaintiff is entitled to limited injunctive relief pending the resolution of the merits of its protest.[13]  As the parties confer to propose further proceedings in this matter, the court makes the following observations.  First, defendant's reservation of the right to seek the posting of a bond by plaintiff, in an amount not stated, may be renewed by motion, if needed.  ECF No. 29 at 31 (citing RCFC 65(c)).  Any such motion shall present a proposed amount for the bond and a rationale supporting that amount; responsive briefing shall proceed pursuant to the rules of this court.

Second, the parties must propose a briefing schedule on the merits of this protest which balances the need for continuity in EDIS services with the need for fairness in the competition for the long-term EDIS contract.  Of particular importance to the court is a briefing schedule which allows for adequate time for the court to issue a reasoned decision <u>and</u> adequate time for a transition to a new contractor other than Engility.  The schedule must acknowledge, in other words, the possibility that a permanent injunction <u>may</u> prevent Engility from proceeding from performance of the bridge contract to performance of the long-term EDIS contract.  How the parties' proposed litigation schedule meshes with the task order schedule of Engility's sole-source bridge contract should be a core consideration for the parties.

Third, Peraton may be concerned that each passing month of Engility's performance of the EDIS bridge contract lessens Peraton's chances of obtaining the long-term EDIS contract, and that concern may prompt Peraton to press for an expedited briefing schedule.  However, when the court weighs the balance of hardships for the issuance of a permanent injunction, the costs expended by the Air Force to purchase the task order services of the bridge contract are immaterial, because those costs are expended to obtain continuity of EDIS services, not to anoint Engility as the eventual awardee.  Similarly, because much of Engility's transition experience was obtained pursuant to a partial CICA override during a protest of the original contract award, the Air Force cannot argue that it would be harmed if it must pay a different contractor to obtain similar experience during the transition to a properly awarded contract.  The bulk of the Air Force's investment in Engility's transition experience, in other words, was at its own risk.  <u>See, e.g.</u>, <u>GTA Containers, Inc. v. United States</u>, 103 Fed. Cl. 471, 491 (2012) (noting that when the government moves forward with contract performance

---

[13]     Because plaintiff's request for a TRO is moot, the injunctive relief is in the form of a preliminary injunction.  <u>See</u> <u>supra</u> note 2.

knowing that a permanent injunction may later issue, it assumes the risk that the costs of those contract services will be wasted).

IV.     Conclusion

Accordingly,

(1)     Plaintiff's motion for a TRO and preliminary injunctive relief, ECF No. 6, as to plaintiff's request for a TRO, is **DENIED in part** as moot;

(2)     Plaintiff's motion for a TRO and preliminary injunctive relief, ECF No. 6, as to plaintiff's request for a preliminary injunction, is **GRANTED in part**, as to the award of any contract under Request for Proposal No. FA8818-18-R-0021, and **DENIED in part**, as to the other relief requested;

(3)     The United States, by and through the Department of the Air Force, its officers, agents, and employees, is hereby **PRELIMINARILY ENJOINED** from awarding a contract under **Request for Proposal No. FA8818-18-R-0021** as a result of the corrective action now underway, until further order of the court;

(4)     On or before **July 30, 2019**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out;

(5)     On or before **July 30, 2019**, defendant shall **FILE** its **Renewed and Quantified Request for the Posting of a Bond**, if any; and

(6)     On or before **July 30, 2019**, the parties shall **CONFER** and **FILE** a **Joint Status Report** proposing a schedule for further proceedings in this matter.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge