# In the United States Court of Federal Claims

No. 19-932C
(E-Filed: December 17, 2019)[1]

|  |  |  |
|---|---|---|
| PERATON INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Post-Award Bid Protest; Revised |
| THE UNITED STATES, | ) | Corrective Action Undertaken in |
| | ) | Response to the Court's Preliminary |
| Defendant, | ) | Injunction; Standing; Mootness. |
| | ) | |
| and | ) | |
| | ) | |
| ENGILITY CORPORATION, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

Kevin P. Connelly, Washington, DC, for plaintiff. Kelly E. Buroker and Jeffrey M. Lowry, of counsel.

Michael D. Snyder, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for defendant. Robert J. Brady, Jonathan P. Widmann, and Michael J. Farr, United States Air Force, of counsel.

Anne B. Perry, Washington, DC, for intervenor-defendant. Jonathan S. Aronie, Townsend L. Bourne, Katie A. Calogero, and Shaunna Bailey, of counsel.

OPINION

---

[1] This opinion was issued under seal on December 4, 2019. Pursuant to ¶ 7 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

CAMPBELL-SMITH, Judge.

This post-award bid protest was the subject of an earlier decision, issued on July 17, 2019, granting plaintiff limited preliminary injunctive relief.  See ECF No. 36 (public version of the court's July 17, 2019 sealed opinion and order, issued on July 22, 2019); see also Peraton Inc. v. United States, 144 Fed. Cl. 59 (2019).  The dispute now before the court is whether the corrective action undertaken by the agency in response to the court's injunction moots this protest.  The dispute is set forth in the following four motions filed by the parties:  (1) plaintiff's motion for leave to supplement the complaint, ECF No. 45, filed under seal September 13, 2019; (2) plaintiff's motion to stay further proceedings, ECF No. 46, filed under seal September 13, 2019; (3) defendant's response and motion to dismiss, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), ECF No. 48, filed October 7, 2019; and (4) intervenor-defendant's response and motion to dismiss brought pursuant to RCFC 12(b)(1) and 12(b)(6), ECF No. 49, filed under seal October 7, 2019.  Also before the court are the complaint, ECF No. 1, plaintiff's combined response/reply brief in support of its motions, ECF No. 50, filed under seal October 21, 2019; intervenor-defendant's reply brief, ECF No. 51, filed under seal November 1, 2019; and defendant's reply brief, ECF No. 52, filed November 1, 2019.  For the reasons set forth below, plaintiff's motions are **DENIED** and defendant's and intervenor-defendant's motions to dismiss are **GRANTED**.

I.  Background[2]

    A.  Solicitation

The procuring agency here is the United States Air Force.  The competition that underlies this protest is for a range of services focused on satellite support, expressed as "Engineering, Development, Integration, and Sustainment," or EDIS.  ECF No. 1-1 at 24.  The solicitation, Request for Proposal No. FA8818-18-R-0021, sought proposals for a five-year, plus two option years, Indefinite Delivery Indefinite Quantity (IDIQ) contract.  Id. at 32-33, 47-474.  The offerors were required, at a minimum, to use small businesses for 25% of the labor Contract Line Item Number (CLIN) services.  Id. at 341, 465-66.

    B.  EDIS Contract Awarded and GAO Protest Filed

---

[2]     The detailed background of this case is supplied by the court's earlier opinion, ECF No. 36.  For ease of reference, the factual circumstances surrounding the protest are recounted here.  When citing the parties' briefs, the court generally omits the parties' citations to underlying documents on the docket.

When the competitive range was established, two of the five offerors, including Lockheed Martin, Inc. (Lockheed), the incumbent contractor, were eliminated from the competition. Id. at 34, 479. After discussions were held with the remaining three offerors, final proposals were received from plaintiff, Peraton Inc. (Peraton), intervenor-defendant, Engility Corporation (Engility), and a third unnamed offeror. Id. at 479. Engility received higher technical ratings than Peraton for its proposal and was awarded the contract on January 31, 2019; Engility began performance of transition activities in February 2019. ECF No. 48 at 9.

On March 5, 2019, Peraton filed a protest at the Government Accountability Office (GAO). ECF No. 36 at 3. As Peraton's bid protest was litigated, on March 7, 2019, the agency issued a partial override of the automatic stay provided by the Competition in Contracting Act (CICA), pursuant to 31 U.S.C. § 3553(d)(3)(C) (2012). ECF No. 36 at 3. The partial CICA override was supported by a Determination and Findings (D&F) document which permitted Engility to continue to perform services ordered under CLIN 0001 (Transition). ECF No. 1-1 at 32-45. Peraton did not challenge the partial CICA override. ECF No. 48 at 10.

C.  GAO Recommendations

On June 11, 2019, the GAO sustained Peraton's protest solely on the 25% small business participation requirement issue, ECF No. 1-1 at 476-86, and found no merit in Peraton's other protest grounds, including Peraton's allegations of proposal evaluation error, id. at 485 n.15. The GAO made three recommendations to the Air Force that are pertinent here. The relevant paragraph of the GAO decision is excerpted here in its entirety:

> We recommend that the Air Force review the terms of the solicitation to determine if this requirement reflects the agency's actual requirements with regard to small business participation in the EDIS contract. If the agency determines that this requirement does meet its actual requirements, we recommend that the agency either terminate the contract awarded to Engility for the convenience of the government and make award to the offeror whose proposal complies with the terms of the solicitation and offers the best value to the government; or open discussions with all offerors, obtain revised proposals, document its evaluation, and make award consistent with the terms of the solicitation. In the alternative, the agency may consider revising the terms of the solicitation if appropriate. If the agency revises the terms of the solicitation, it should open discussions with all offerors, obtain revised proposals, document its evaluation, and make award consistent with the terms of the solicitation.

Id. at 486.

D.  Sole-Source Bridge Contract Awarded to Engility

On June 20, 2019, the Air Force awarded a sole-source bridge contract to Engility, allowing Engility to provide EDIS services for up to four three-month periods pending the resolution of the corrective action which the Air Force had undertaken in light of the guidance provided by the GAO.  ECF No. 48 at 11-12 & n.4; ECF No. 49 at 2; ECF No. 50 at 6-7.  The sole-source award was supported by a Justification and Approval (J&A) document.  ECF No. 48 at 11 & n.4.  In Count I of the complaint, Peraton challenges the sole-source award to Engility.  ECF No. 1 at 11-12.

E.  Initial Corrective Action Taken Further to the GAO's Recommendations

In Count II of its complaint, Peraton challenges the agency's initial corrective action, which included multiple communications with the offerors, that the Air Force undertook in response to the recommendations of the GAO.  Id. at 12-13.  The Air Force contemplated making an award of the EDIS contract based on its evaluation of the offerors' revised proposals, although the revisions were limited to the proposal sections addressing the 25% small business participation requirement.  Id. at 13; see also id. at 17 (requesting, in the alternative, that the Air Force "engage in full and open discussions and permit offerors to revise any aspect of their proposals") (emphasis added).  Plaintiff also asserts that the Air Force's initial corrective action was "entirely without a rational basis."  Id. at 13.

F.  Plaintiff's Allegations of Bad Faith Conduct by the Agency

In Count III of the complaint, plaintiff asserts that the Air Force has attempted to direct the award of the EDIS contract to Engility.  ECF No. 1 at 14.  For example, plaintiff argues that both the sole-source bridge contract awarded to Engility, and the agency's initial corrective action, "demonstrate an intent by the Air Force to ensure that Engility receives the resulting contract under the pretext of a competitive award."  Id.  As the court held previously, "the primary thrust of plaintiff's allegations [in Count III] is that the agency has acted in bad faith in this procurement."  ECF No. 36 at 5 (citing ECF No. 1 at 14).

G.  Ruling on Plaintiff's Request for a Preliminary Injunction

The court granted limited preliminary injunctive relief on Count II of the complaint, which contested the agency's corrective action following the GAO protest, but denied any preliminary injunctive relief on the other two counts of the complaint.  Regarding Count I, which challenged the sole-source award, the court found that "plaintiff has not shown that it possesses standing for its challenge to the award of the sole-source bridge contract to Engility."  ECF No. 36 at 8.  Regarding Count III and plaintiff's allegations of bad faith conduct by the Air Force, the court found that "plaintiff

has not shown a likelihood of success on the merits of Count III of the complaint." Id. at 13.

When discussing the limited preliminary injunctive relief afforded plaintiff, the court commented that the "tailored injunction contemplated here ensures that the parties and the court preserve, for a relatively short time, the competitive nature of this procurement." ECF No. 36 at 12.  The preliminary injunction stated:

> The United States, by and through the Department of the Air Force, its officers, agents, and employees, is hereby **PRELIMINARILY ENJOINED** from awarding a contract under **Request for Proposal No. FA8818-18-R-0021** as a result of the corrective action now underway, until further order of the court[.]

Id. at 15.  The court ordered the parties to file status reports to update the court on subsequent EDIS procurement activities.  ECF Nos. 36, 38.

        H.        Post-Injunction Revised Corrective Action and Disputed Status of Protest

On August 26, 2019, the court was informed that the Air Force had amended the solicitation and had undertaken a different corrective action.  ECF No. 39 (joint status report).  The revised corrective action instituted by the Air Force responded to this court's limited preliminary injunction of a contract award based on the initial corrective action:

> In response to the Court's decision, on August 16, 201[9], the Air Force issued an amendment to the EDIS Solicitation . . . with the stated purpose to "[c]larify the instructions[]" to offerors to calculate the small business participation rate.  The Air Force also permitted offerors an opportunity to revise any aspect of their proposals with the due date for [revised] proposals set to September 16, 2019.

ECF No. 50 at 7 (citing ECF No. 45-1 at 12).  In light of this development, the government and Engility urged that this protest be dismissed as moot, whereas plaintiff recommended that this bid protest be stayed until December 6, 2019, pending the Air Force's evaluation of revised proposals and new award decision.  See ECF No. 43 at 1-2 (scheduling order) ("The court noted [during a status conference held September 5, 2019] that the parties are in apparent disagreement as to whether this protest is moot and should be dismissed, or not moot and appropriate for a stay pending the agency's re-evaluation of proposals.").  The court also noted that plaintiff had indicated that it might challenge the Air Force's revised corrective action before the deadline for the receipt of revised proposals, September 16, 2019.  Id. at 2.

5

On September 13, 2019, plaintiff filed a motion for leave to supplement the complaint, attaching thereto a proposed "supplemental complaint," as well as a motion to stay further proceedings. See ECF Nos. 45, 45-1, and 46. Plaintiff describes the proposed supplemental complaint as a "protest" of the Air Force's revised corrective action. See ECF No. 50 at 14 ("Peraton sought leave to supplement its Complaint[] to protest this new [revised corrective action]."). At the same time, however, plaintiff recommends that the court stay this protest to allow the revised corrective action to culminate in the selection of an awardee. See ECF No. 46 at 4 ("By allowing the Air Force to finalize its current corrective action, the amount of filings would be limited to a single protest, if any protest at all."). In other words, it is plaintiff's view that the reasonable and efficient course of proceedings is to wait and see whether Peraton is the awardee of the EDIS contract, because that course of action might resolve this protest. See id. ("[I]f Peraton is the recipient of the award, it would effectively receive most of the relief it is presently requesting from the Court, despite its concerns with the nature of the corrective action, and would likely withdraw any remaining claims.").

Defendant and Engility oppose plaintiff's motions and move for dismissal of all three counts of the complaint, and also suggest that supplementation of the complaint, by means of plaintiff's "supplemental complaint," would be futile or otherwise improper. ECF Nos. 48-49. Further, the government and Engility oppose a stay in this matter, because "the underlying complaint should be dismissed." ECF No. 48 at 27; see also ECF No. 49 at 2 (stating that "this protest should not be stayed – it should be dismissed"). The court will address each count of the complaint in turn but begins it analysis by stating the legal standards that are relevant here.

II.     Legal Standards

    A.     Dismissal under RCFC 12(b)(1)

When reviewing a complaint to determine its jurisdiction over a plaintiff's claims, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted). Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Reynolds, 846 F.2d at 748 (citations omitted). In bid protests, mootness and standing are threshold jurisdictional issues. Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citation omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

    B.     Dismissal under RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss brought under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." Scheuer, 416 U.S. at 236. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The "facial plausibility" requirement is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556) (emphasis added). "Under Twombly and Iqbal, the court must not mistake legal conclusions presented in a complaint for factual allegations which are entitled to favorable inferences." Extreme Coatings, Inc. v. United States, 109 Fed. Cl. 450, 454 (2013) (citing Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1062 (Fed. Cir. 2012)); see also Papasan v. Allain, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted). "The Supreme Court explained in Twombly that while [the pleading standard] does not require 'detailed factual allegations,' it does require more than 'labels and conclusions.'" Sioux Honey, 672 F.3d at 1062 (quoting Twombly, 550 U.S. at 555)).

III. Analysis

    A.     Count I: Sole-Source Bridge Contract Award to Engility

        1.     Test for Standing (Post-Award)

Engility, defendant and the court, as noted in its previous opinion, are in agreement that Peraton must establish standing to challenge the award of the sole-source bridge contract to Engility by meeting the "substantial chance" standard. ECF No. 36 at 7; ECF No. 48 at 14-15; ECF No. 49 at 5. Indeed, Peraton acknowledged that this is the correct standard for standing, as applied to its challenge to the sole-source award to Engility, in a memorandum submitted earlier in the litigation of this protest. ECF No. 27 at 18-19. Now, however, plaintiff argues that a better test for standing, in this instance, would be supplied by the standard used in certain pre-award scenarios. ECF No. 50 at 9 (citing Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1362 (Fed. Cir. 2009)).

Although plaintiff's view of the law may have changed, the precedent on this issue is clear. In the post-award context, to show standing a protestor must establish that "it had a substantial chance of receiving the award[]." Myers, 275 F.3d at 1370. This standard applies to post-award challenges to sole-source contract awards. Id. Here, then, Peraton must show that it had a substantial chance of receiving the sole-source contract awarded to Engility on June 20, 2019.

2. Plaintiff Lacks Standing to Assert the Claim in Count I

On substantially the same record, this court found that Peraton lacked standing for the claim in Count I of its complaint. ECF No. 36 at 7-8. No events in the intervening time period have affected Peraton's chances of receiving a sole-source EDIS contract award in June 2019. Even when the factual allegations in the proposed supplemental complaint are considered, Peraton has adduced no facts that show that Peraton was ready to take over the EDIS responsibilities that were soon to be relinquished by Lockheed. Cf. ECF No. 45-1 at 13-14 (adding factual allegations that go to the merits of a challenge to the sole-source award but which do not address the "substantial chance" standard). Because Peraton has not met its burden to establish standing, Count I of the complaint must be dismissed for lack of subject matter jurisdiction.

B. Count II:  Corrective Action

1. Mootness of Challenge to Initial Corrective Action

This court issued a limited preliminary injunction of any contract award founded on the Air Force's initial corrective action. ECF No. 36 at 12-15 & n.11. The agency's initial corrective action was then superseded by a revised corrective action responding directly to the concerns identified in the court's opinion. See ECF No. 50 at 14 ("Peraton concedes that this newly proposed corrective action is a new decision that supersedes and replaces the three prior attempts at corrective action."). Count II, which challenges a corrective action that has been overtaken by an entirely different approach to obtaining revised proposals, is moot because the challenged action has been abandoned by the Air Force.

Although the parties dispute whether Peraton has obtained through the Air Force's revised corrective action exactly the relief it sought in Count II, the court finds that Count II is moot pursuant to the precedent of Chapman Law Firm Co. v. Greenleaf Construction Co., 490 F.3d 934, 939 (Fed. Cir. 2007) ("When, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed.") (emphasis added). Here, there is no question that the initial corrective action is no longer in controversy, because the Air Force is pursuing an entirely different path in this procurement. Generally, when an agency undertakes corrective action that is consonant with reasonable direction from the GAO, that corrective action renders any protest of the superseded agency action moot. E.g., Metro. Van & Storage, Inc. v. United States, 92 Fed. Cl. 232, 253-55 (2010); see also Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1333 (Fed. Cir. 2004) ("We agree that the complaints based on pre-corrective action events are moot where charged as a specific violation of a code or statute, but are relevant in order to establish a possible pattern of bias."); Square One Armoring Serv., Inc. v. United States, 123 Fed. Cl. 309, 326 (2015) (dismissing as moot a challenge to an agency's evaluation and award decision that had been superseded by

8

corrective action). The GAO holds a similar view of corrective action, which generally acts as a superseding event rendering challenges to prior agency action moot. E.g., HP Enter. Servs., LLC, B-413382.2, 2016 CPD ¶ 343, 2016 WL 7009947, at *3 n.3 (Comp. Gen. Nov. 30, 2016) ("Where an agency takes corrective action in response to a protest under which it reevaluates/reconsiders its prior source selection decision, we view such corrective action as superseding the prior action, rendering a protest challenging that prior action moot.") (citation omitted). The court finds that plaintiff's challenge to the Air Force's initial corrective action is moot.

2. Revised Corrective Action Not Protested in this Suit

Once the Air Force amended the solicitation and set the conditions for the submission of revised proposals, plaintiff could have filed a protest of that procurement action. Plaintiff filed no protest here, or at the GAO. Instead, Peraton attempted to graft a new protest onto a protest that was essentially moot, and simultaneously asked the court to stay what might be described as an old protest/new protest hybrid while awaiting the outcome of the new EDIS contract award. See ECF No. 50 at 19 ("Peraton filed its request to supplement in advance of its motion to stay precisely to ensure that its protest was properly before the Court before any stay was issued."); see also id. at 10 (asserting that the standing test now applicable to plaintiff's new/old protest is the one used in pre-award protests) (citing Weeks Marine, 575 F.3d at 1362). Plaintiff's litigation strategy does not comport with either precedent or sound case management principles.

The court observes, first, that the parties have pointed to no analogous case where a protestor simultaneously attempted to protest a second corrective action within a bid protest that was moot, and also sought a stay so that its new protest would be held in abeyance pending a possible contract award in favor of the protestor. Plaintiff cites a decision of this court that held that a protestor, once a contested contract award to a competitor was terminated for the convenience of the government, could amend its bid protest complaint to challenge the cancellation of the underlying solicitation. Id. at 18-19 (citing Innovative Element, LLC v. United States, 140 Fed. Cl. 743, 749-50 (2018)). But Innovative Element presents a very different fact pattern, and, in any case, does not constitute binding precedent in this case. See W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.") (citations omitted).

Plaintiff demonstrates in its motion to stay proceedings that plaintiff would like the "Air Force to proceed forward with its corrective action without impediment." ECF No. 46 at 4. Yet, plaintiff also requests that the court docket a new protest of the Air Force's revised corrective action within this case. ECF No. 50 at 14. As Engility argues, Peraton wants to "'have its cake and eat it too.'" ECF No. 51 at 11. Engility suggests, and the court agrees, that plaintiff's litigation strategy—specifically, seeking to preserve without prosecuting a challenge to the revised corrective action—is foreclosed by the

guidance furnished in Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007).

In the court's view, the rationale behind the waiver rule established by Blue & Gold Fleet forecloses the "wait and see" approach that Peraton proposes in this litigation. It is helpful, in this inquiry, to review the precedent and reasoning that underlie the waiver rule established in Blue & Gold Fleet. First, an offeror cannot ignore a patent ambiguity in a solicitation and expect this court to redress that ambiguity in subsequent litigation. Id. at 1313 (citing Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1381 (Fed. Cir. 2000)). Second, the wait and see approach risks "restart[ing] the bidding process" once an award has been made and may provide an advantage to the protestor who lies in wait. Id. at 1314. Third, the United States Court of Appeals for the Federal Circuit noted that both the GAO and this court have seen the need for pre-award protests to be litigated in a timely fashion, and that it is fundamentally unfair for offerors to postpone their challenge to a solicitation, "'sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive [an] award.'" Id. (quoting Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 175 n.14 (2005)).

Thus, in the court's view, plaintiff's request to supplement the complaint, so as to challenge the Air Force's revised corrective action, in light of plaintiff's request to stay this litigation while awaiting a new EDIS contract award, is impermissible under the precedential guidance provided by Blue & Gold Fleet. The court need not reach defendant's arguments that the proposed supplementation is futile, under Foman v. Davis, 371 U.S. 178 (1962), or that plaintiff's challenge to the revised corrective action is barred by the doctrine of judicial estoppel. ECF No. 48 at 18 n.7, 20. The court observes that from a case management perspective, plaintiff's attempt to graft a new protest onto an old, moot protest would lead to inequitable results if widely permitted.

Here, the court invested its limited resources in the expedited consideration of plaintiff's challenge to protestable procurement actions that took place before this suit was filed on June 26, 2019. Plaintiff did not thereby obtain the right to hold its place in line through a stay of a bid protest that was moot. Bid protests consume valuable court resources and must be addressed in turn as they are filed; under the circumstances of this revised corrective action, any new protest of that action should have been filed as a new case, or, at the very least, should not have been presented as a proposed supplemental complaint which harbored a new pre-award protest, paired with a request for a stay of proceedings.[3]

---

[3] A judge of this court may allow supplementation of a bid protest complaint, in some circumstances, to address procurement developments that have occurred after a bid protest has been filed in this court. See, e.g., Coastal Envtl. Grp., Inc. v. United States, 114 Fed. Cl. 124, 135 (2013) (permitting the plaintiff to supplement the complaint with a challenge to a

In sum, supplementation of the complaint regarding the allegations in Count II, as proposed here by plaintiff, is barred by the precedent of Blue & Gold Fleet. Plaintiff did not file a protest, or the equivalent of a protest, of the Air Force's revised corrective action when it filed its motion for leave to supplement the complaint and its motion to stay proceedings on September 13, 2019. Further, as noted supra, the claim in Count II is moot. Count II must be dismissed for lack of subject matter jurisdiction, because it is moot.

        C.        Count III:  Allegations of Bad Faith Conduct by the Air Force

The court has considered plaintiff's allegations of bad faith conduct by the Air Force, which are presented in Count III of the original complaint and are repeated in Count III of the proposed supplemental complaint.[4] Although Count III is challenged by defendant and intervenor-defendant under RCFC 12(b)(6), for failure to state a claim upon which relief can be granted, the court considers this count, like Count II, to be—at this stage of the proceedings—moot as well as barred by the precedential guidance of Blue & Gold Fleet.

On September 13, 2019, after the agency's revised corrective action was well underway, plaintiff filed its motion for leave to supplement the complaint and its motion to stay proceedings. This procedural development unmoored the bad faith allegations raised in a conclusory fashion in the complaint from any attempt to build an administrative record upon which those allegations could be substantiated. In other words, this procurement had entered a new phase and Peraton's protest of its discrete former phase, caught in a procedural anomaly of plaintiff's own making, was superseded and moot. E.g., Chapman, 490 F.3d at 939; Metro. Van, 92 Fed. Cl. at 253-55.

If plaintiff wished to actively prosecute the bad faith claim in Count III through this protest, Peraton could not, at the same time, request a stay. Nor could Peraton attempt to preserve Count III by seeking a stay of proceedings in hopes of receiving the EDIS contract. To the extent that this court could have reached the merits of any bad faith claim in the context of the Air Force's revised corrective action, that option was foreclosed, under the precedential guidance of Blue & Gold Fleet, when plaintiff

---

procurement cancellation in a bid protest that was moot). However, the court has found no case where the court allowed the supplementation of a bid protest complaint to challenge a corrective action taken in response to the court's injunction, as well as a stay of proceedings pending a new award decision.

[4]     The only modification of Count III in the proposed supplemental complaint is in the citation to the paragraphs of that complaint that are incorporated in Count III by reference. ECF No. 45-1 at 16-17.

simultaneously sought to supplement the complaint and stay proceedings on September 13, 2019.

In the alternative, the court agrees with defendant and intervenor-defendant that plaintiff has failed to state a claim of bad faith conduct upon which relief may be granted. In its earlier opinion, the court found that plaintiff's claim based on alleged bad faith conduct by the Air Force did not have a likelihood of success so as to warrant injunctive relief. ECF No. 36 at 13-14. Every significant fact in the record at that point is the same now, with the exception of the steps taken by the Air Force after July 17, 2019, and before September 13, 2019.

Plaintiff places much emphasis on the fact that the Air Force took steps to ensure the continuity of EDIS services while litigating plaintiff's protests, and that the revised corrective action permits Engility to revise its proposal. See ECF No. 50 at 20-21 ("[A]lthough the Government acted with urgency to install Engility through the use of a 'limited' CICA-stay override and a bridge contract, it is now content to take its time to craft a corrective action approach that ensures Engility can cure its deficient proposal while hopefully evading judicial scrutiny."). Plaintiff concludes that the facts of this procurement "demonstrate an intent by the Air Force to ensure that Engility receives the resulting contract under the pretext of a competitive award." But the factual allegations proffered by plaintiff do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The inquiry is context-specific. Id. at 679 (citation omitted). The Air Force benefits from a presumption that it acted, and continues to act, in good faith while conducting the EDIS procurement. E.g., Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002). The circumstances of this procurement, unadorned by plaintiff's labels and conclusions, fall short of facial plausibility on the issue of bad faith conduct by the Air Force. See, e.g., Galen, 369 F.3d at 1330 ("'In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated with evidence of some specific intent to injure the plaintiff.'" (quoting Torncello v. United States, 681 F.2d 756, 770 (Ct. Cl. 1982))); Jacobs Tech. Inc. v. United States, 131 Fed. Cl. 430, 454-56 (2017) (dismissing a protest for failure to state a claim because the agency's conduct was not "hard to explain" absent bad faith).

Plaintiff argues, nonetheless, that "Peraton has a facially valid basis to maintain a bad-faith claim." ECF No. 50 at 21 (citing Keco Indus., Inc. v. United States, 492 F.2d 1200, 1204 (Ct. Cl. 1974)). Plaintiff relies, in particular, on portions of the court's earlier opinion which highlighted actions taken by the Air Force which resulted in Engility's performance of the sole-source contract. ECF No. 50 at 21 (citing ECF No. 36 at 8, 13). The agency actions discussed by the court were not enough, however, to show a likelihood of success on the merits of plaintiff's bad faith claim so as to justify a

preliminary injunction, and are not now sufficient to establish the facial plausibility of a claim of bad faith conduct by the Air Force in this procurement.

Plaintiff's bad faith claim in Count III of the complaint, at this procedural juncture, is moot as well as barred by the precedential guidance of Blue & Gold Fleet. In the alternative, Count III fails to state a claim upon which relief can be granted. For these reasons, Count III must be dismissed.

IV.   Conclusion

Accordingly,

(1) Plaintiff's motion for leave to supplement the complaint, ECF No. 45, is **DENIED**;

(2) Plaintiff's motion to stay proceedings, ECF No. 46, is **DENIED**;

(3) The limited preliminary injunction entered by the court on July 17, 2019, that the Air Force was preliminarily enjoined "from awarding a contract under **Request for Proposal No. FA8818-18-R-0021** as a result of the corrective action [then] underway, until further order of the court," ECF No. 33 at 15, is **LIFTED**;

(4) Defendant's motion to dismiss, ECF No. 48, is **GRANTED**;

(5) Intervenor-defendant's motion to dismiss, ECF No. 49, is **GRANTED**;

(6) The clerk's office is directed to **ENTER** final judgment for defendant and intervenor-defendant, **DISMISSING** all three counts of plaintiff's complaint, for lack of subject matter jurisdiction, without prejudice:

(7) On or before **December 16, 2019**, the parties shall **CONFER** and **FILE** a **notice** of filing, attaching a proposed redacted version of this opinion, with any material deemed proprietary blacked out, so that a copy of the opinion can then be made available in the public record of this matter; and

(8) On or before **January 6, 2020**, the parties are directed to **FILE** the **redacted versions** of their sealed filings, pursuant to the court's protective order issued in this matter.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge